IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMLIN CORPORATE INSURANCE N.V. and CG POWER SYSTEMS CANADA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | 8:10CV31 |
| v. | ) ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) | |

This matter is before the Court on plaintiffs' and defendant's cross-motions for partial summary judgment (Filing No. 34; Filing No. 50) with requests for oral argument, plaintiffs' objection to part of defendant's reply brief supporting its motion for partial summary judgment[1] (Filing No. 77), and defendant's motion for leave to file a first amended answer with request for oral argument (Filing No. 58). The Court has reviewed the motions, briefs, and the applicable law and makes the following findings.

### I. BACKGROUND

The outcome determinative facts relevant to these motions are largely undisputed. This civil case arises from events surrounding the railway shipment by CG Power Systems

---

[1] Plaintiffs' objection to defendant's reply brief is duly noted, and the relevant portions of defendant's reply brief objected to by plaintiffs were not taken into consideration in deciding the issues before the Court.

Canada, Inc. ("CG") of a large electrical transformer shipped on railcar KRL 300301 under two separate contracts (Plts.' Ex. 3). On or about January 26, 2009, the train car carrying the transformer derailed at the Davidson Yard in Fort Worth, Texas (Plts.' Ex. 5, UP's email dated January 27, 2009; Plts.' Ex. 6, UP's Report for Wreck, UP Bates 65). CG contracted with Canadian National Railroad ("CNR") to ship the transformer from Canada to Fort Worth, Texas (with BNSF Railway Co. ("BNSF") performing carriage from Noyes, Minnesota to Fort Worth, Texas) (Plts.' Ex. 3, p. 2). There was a separate contract between CG and Union Pacific Railroad Company ("UP") for UP to move the transformer from Fort Worth, Texas, to McCoy, Texas. (*Id.*) Plaintiffs never sued CNR and BNSF has been dismissed from this case (Filing No. 42-1). Amlin Corporate Insurance, N.V. ("Amlin") "is the insurer of the shipment that is the subject of this action." (Filing No. 35, p. 2). Thus, the UP contract and the UP shipment are the only issues remaining before this Court.

The UP shipment was subject to UP Price Authority 4467, Item 3002-G. The UP Price Authority 4467, Item 3002-G provided:

> GENERAL APPLICATION RULES FOR ITEM
>
> 3002-G
>
> 1. Price is subject to Exempt Circular 16 (series), item 695 (series) . . .
>
> 3. Price is subject to Exempt Circular UP (series) . . .

-2-

> **6.    Subject to maximum liability of $25,000 per Car.**

(Plts.,' Ex. 8, UP Price Authority 4467) (emphasis added).  UP's Circular 16-E provided:

> **On moves that originate in the United States Shippers may, at their option, select liability provisions set forth in 49 U.S.C. Section 11706 (Carmack) as explained in ITEM 17.**  If 49 U.S.C. Section 11706 (Carmack) is not selected, the liability provisions of this item will govern.

(Plts.' Ex. 9, UP Circular 16-E, p. 185 para. 1.C.) (emphasis added).  UP's Circular 16-E, ITEM 17 provided:

> 49 U.S.C. Section 11706 provides for full-value liability and other liability terms for the carrier and the shipper.  To make a shipment pursuant to the terms of 49 U.S.C. Section 11706, the shipper must comply with all of the following provisions:
>
> 1.    Shipper must notify carrier no less than 72 hours before the shipment is released for transportation that the shipper chooses Carmack liability protection.
>
> 2.    Shipper may at this option specify in the Bill of Lading that the shipment shall move under the liability provisions set for under 49 U.S.C. Section 11706, in which case the rate shall be 200 percent of the applicable rate subject to this circular.

      3.     The shipping instructions must note that the shipment is moving under 49 U.S.C. Section 11706 liability terms and that the shipment is subject to a specific pricing authority.

      4.     Carmack liability coverage is not available for shipments that originate in Mexico.

(Plts.' Ex. 9, UP Circular 16-E, p. 189).

Plaintiffs argue this Court should find that defendant is not entitled to a limitation of liability of $25,000; whereas defendant argues that this Court should enforce the $25,000 per railcar liability as provided in UP Price Authority 4467, Item 3002-G.

## II.  LEGAL ANALYSIS

### A.  SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson,* 477 U.S. at 248.  A material issue is genuine if it has any real basis in

the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

On a motion for summary judgment, the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Anderson,* 477 U.S. at 250.  However, the nonmoving party may not rest on the mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If the plaintiff cannot support each essential element of his claim, summary judgment will be granted because a complete failure of proof regarding an essential element necessarily renders other facts immaterial.  *Id.* at 322-23.

### B.   STANDARD OF REVIEW

The relevant principles of Nebraska contract law are as follows:

> In construing a contract, we look first to see whether it is unambiguous as a matter of law. "The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them."  Moreover, a contract must be interpreted to give effect to the parties' intent at the time the contract was drafted.  "A contract must be construed as a whole, and if possible, effect must be given to every part thereof."

*Nebraska Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032 (8th Cir. 2000) (citations omitted).

### C.   DISCUSSION

In arguing that this Court should find defendant is not entitled to a limitation of liability of $25,000, plaintiffs cite to three authorities of law: (1) the Carmack Amendment, 49 U.S.C. § 17706 ("Carmack"); (2) Federal Common Law as described in *Emerson Electric Supply Co. v. Estes Express Lines Corp.*, 324 F. Supp. 2d 713, 721-25 (W.D. Pa. 2004); aff'd 451 F.3d 179 (3d Cir. 2006); and (3) Nebraska state law, Neb. Rev. Stat. UCC § 7-309 and Texas state law, V.T.C.A., Bus. & C. § 7.309(b).  Primarily, plaintiffs argue that the UP shipment and the UP contract are governed by Carmack, and that UP was required to offer, but did not offer, CG an alternative Carmack liability rate for the UP move.  Plaintiffs assert that pursuant to Carmack, a rail carrier cannot limit its liability unless it provides the shipper a reasonable opportunity to choose between two or more levels of liability and freight rates.  Plaintiffs further argue that if this Court finds the UP move is not subject to Carmack, the move is subject to Federal Common Law and/or state law, which both assert the same alternative liability rule when a carrier attempts to limit its liability.

Irrespective of whether Carmack, Federal Common Law, or any state law applies to this factual situation, CG was provided an alternative liability choice in UP's Circular 16-E:

> On moves that originate in the United States Shippers may, at their option, select liability provisions set forth in 49 U.S.C. Section 17706 (Carmack) as explained in ITEM 17.

(Plts.' Ex. 9, UP Circular 16-E, p. 185 para. 1.C.). Plaintiffs claim this provision does not apply because the move originated in Canada, not the United States. This assertion by plaintiffs does not afford the UP contract language its plain and ordinary meaning even when all the facts are construed in the light most favorable to plaintiff. In fact, plaintiffs contradict themselves with this assertion, as plaintiffs also argue that the point of origin of this shipment is where UP's obligation as receiving rail carrier originated (Filing No. 65, p. 19)). There were two parties to this contract: defendant UP and plaintiff CG. The sole purpose of this contract was to govern a move of an electronic transformer from one point in Texas to another point in Texas. As the shipment took place entirely in one state in the United States, it can be said that the shipment subject to this contract originated in the United States. Thus, there was explicit language within the contract providing CG an opportunity to seek an alternative level of liability, although CG did not choose to enforce such provision when entering into the contract.

The Court finds UP is entitled to enforce the $25,000 liability limitation to which CG agreed.  Plaintiffs' joint motion for partial summary judgment will be denied and defendant's motion for partial summary judgment will be granted.

### D. DEFENDANT'S MOTION TO AMEND ANSWER

Defendant moves this Court for an order permitting it to file a first amended answer to include a counter-claim against plaintiff CG for breach of contract for failing to maintain the requisite insurance naming defendant as an additional insured thereunder.  "The Federal Rules of Civil Procedure liberally permit amendments to pleadings.  '[A} party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'  Fed.R.Civ.P. 15(a)."  *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000).  As nothing in the facts of this case shows undue delay, bad faith, or dilatory motive on behalf of defendant or indicates that plaintiff CG will be unduly prejudiced, this Court will allow the amendment.  *Id.*  Defendant's motion to amend answer will be granted.  Accordingly,

IT IS ORDERED:

1)  Plaintiffs' joint motion for partial summary judgment (Filing No. 34) is denied.

2)  Defendant's motion for partial summary judgment (Filing No. 50) is granted.

3) Defendant's motion for leave to file a first amended answer (Filing No. 58) is granted.  Defendant shall file its amended answer on or before February 4, 2011.

4) All requests for oral argument are denied.

DATED this 25th day of January, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court