```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEBRASKA
```

| | | |
|---|---|---|
| AMLIN CORPORATE INSURANCE N.V., and CG POWER SYSTEMS CANADA, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | 8:10CV31 |
| v. | ) ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) | |

This matter is before the Court upon plaintiffs' motion for reconsideration(Filing No. 82). Plaintiffs request that the Court reconsider its memorandum and order dated January 25, 2011 (Filing No. 80) enforcing defendant Union Pacific Railroad Company's (Union Pacific) purported limitation of liability. Also before the Court is plaintiff CG Power Systems Canada, Inc.'s (CG Power) motion to dismiss the counterclaim of defendant Union Pacific for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Filing No. 89). Upon review of the motions, briefs, and relevant law, the Court finds the motions will be denied.

I.   **STANDARDS OF REVIEW**

This Court will construe a motion for reconsideration under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. A Rule 59(e) motion is properly granted, among other things, where it is necessary to "correct manifest errors of law or fact upon which the judgment is based" and/or "to protect manifest

injustice." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 2810.1, p. 124 (1995).  Similarly, the Court may grant relief under Rule 60(b) due to, among other things, "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).

When ruling on a motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

II.  MOTION TO RECONSIDER

To recap the relevant, undisputed facts surrounding the rail movement subject to this lawsuit: plaintiff CG Power contracted with Canadian National Railroad (CNR) to ship a large electrical transformer from Canada to Fort Worth, Texas (with BNSF Railway Co. (BNSF) performing carriage from Noyes, Minnesota to Fort Worth, Texas) pursuant to the CNR contract.  Plaintiff CG Power entered into a separate contract (the Union Pacific contract) with defendant Union Pacific to move the transformer from Fort Worth, Texas to McCoy, Texas.  On or about January 26, 2009, the train car carrying the transformer derailed at Union Pacific's Davidson Yard in Fort Worth, Texas.  Plaintiffs never sued CNR, and BNSF has been dismissed from this lawsuit.  Plaintiff Amlin

-2-

Corporate Insurance, N.V. (Amlin) is the insurer of the shipment that is subject to this action.  Thus, the terms of the Union Pacific contract and the events which took place during Union Pacific's shipment of the transformer are the only facts relevant to this case.

The Union Pacific shipment was subject to Union Pacific Price Authority 4467, Item 3002-G.  The Union Pacific Price Authority 4467, Item 3002-G provided:

> GENERAL APPLICATION RULES FOR ITEM
>
> 3002-G
>
> 1. Price is subject to Exempt Circular 16 (series), item 695 (series) . . .
>
> 3. Price is subject to Exempt Circular UP (series) . . .
>
> **6.   Subject to maximum liability of $25,000 per Car.**

(Plts.,' Ex. 8, UP Price Authority 4467) (emphasis added).

Union Pacific's Circular 16-E provided:

> **On moves that originate in the United States Shippers may, at their option, select liability provisions set forth in 49 U.S.C. Section 11706 (Carmack) as explained in ITEM 17.** If 49 U.S.C. Section 11706 (Carmack) is not selected, the liability provisions of this item will govern.

(Plts.' Ex. 9, UP Circular 16-E, p. 185 para. 1.C.) (emphasis added).  Union Pacific's Circular 16-E, ITEM 17 provided:

-3-

> 49 U.S.C. Section 11706 provides for full-value liability and other liability terms for the carrier and the shipper. To make a shipment pursuant to the terms of 49 U.S.C. Section 11706, the shipper must comply with all of the following provisions:
>
> 1. Shipper must notify carrier no less than 72 hours before the shipment is released for transportation that the shipper chooses Carmack liability protection.
>
> 2. Shipper may at this option specify in the Bill of Lading that the shipment shall move under the liability provisions set for under 49 U.S.C. Section 11706, in which case the rate shall be 200 percent of the applicable rate subject to this circular.
>
> 3. The shipping instructions must note that the shipment is moving under 49 U.S.C. Section 11706 liability terms and that the shipment is subject to a specific pricing authority.
>
> 4. Carmack liability coverage is not available for shipments that originate in Mexico.

Paul Stein, speaking of behalf of CG Power, testified that he never read the above-referenced terms before agreeing to contract with Union Pacific thereunder. *See* Union Pacific's brief supporting denial of plaintiffs' motion for reconsideration, Filing No. 86, p. 7.

In order for Union Pacific to limit its liability, plaintiffs claim Union Pacific needed to have offered an alternative liability rate pursuant to the Carmack Amendment, and/or federal common law, and/or state law.  Although defendant Union Pacific did indeed offer plaintiffs the opportunity to elect an alternative liability rate in the above-referenced provisions, plaintiffs assert this Court should find that defendant is not entitled to a limitation of liability of $25,000 per car because the move of the transformer did not "originate in the United States," making the provision of the Union Pacific contract offering an alternative liability rate inapplicable to the move of the transformer.  The Court disagrees.

Plaintiffs respectfully submit that the Court overlooked controlling Supreme Court precedent in determining that the rail movement subject to this lawsuit originated in the United States.  If the provisions of the Carmack Amendment, as codified in 49 U.S.C. Section 11706, apply to the Union Pacific contract as plaintiffs contend, this Court must decide the meaning of the word originate as found in the Union Pacific contract, pursuant to Supreme Court precedent analyzing the Carmack Amendment.  In *Kawasaki Kisen Kaisha Ltd. et al v. Regal-Beloit Corp. et al*, 130 S.Ct. 2433, 2445 (2010), the Supreme Court held:

> [I]f . . . the bills of lading for
> [an international] transport ended
> at this country's ports and the
> cargo owners then contracted with

>Union Pacific to complete a new journey to an inland destination in the United States[,] [u]nder those circumstances, Union Pacific would have been the receiving rail carrier and would have been required to issue a separate Carmack-compliant bill of lading to the cargo owners. *See Reider v. Thompson*, 339 U.S. 113, 117 (1950)("If the various parties dealing with this shipment separated the carriage into distinct portions by their contracts, it is not for courts judicially to meld the portions into something they are not.")

Under Carmack, a "receiving" rail carrier is considered the "originating" rail carrier. *See Kawasaki*, 130 S.Ct. at 2445 (2010); *see also Reider*, 339 U.S. at 117 ("The test is not where the shipment originated, but where the obligation of the carrier as receiving carrier originated."). Thus, as the contract for the transport of the transformer from Canada to Fort Worth, Texas ended in Fort Worth, and CG Power then contracted with Union Pacific to complete a new journey to a destination within the United States, Union Pacific is considered the receiving carrier for the newly issued, separate Union Pacific contract. Such makes Union Pacific the originating carrier of the new Union Pacific contract for the new journey. As the various parties dealing with this shipment separated the carriage into distinct portions by their contracts, it is not for this Court to judicially meld the two contracts together into something they are not.

Even if it is later discovered or held that the provisions of the Carmack Amendment do not apply to this move, "[t]he terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them." *Nebraska Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032 (8th Cir. 2000) (citations omitted). There were two parties to this contract: defendant Union Pacific and plaintiff CG Power. The sole purpose of this contract was to govern a move of an electronic transformer from one point in Texas to another point in Texas. As the shipment took place entirely in one state in the United States, it can be said that the shipment subject to this contract originated in the United States. Thus, there was explicit language within the contract providing CG Power an opportunity to seek an alternative liability rate, although CG Power did not choose to enforce such provision when entering into this distinct contract with Union Pacific.

The Court has thoroughly reviewed its previous ruling and finds it was not based upon mistake, inadvertence, or manifest error of law or fact. The Court maintains Union Pacific is entitled to enforce the $25,000 liability limitation per car which plaintiff CG Power agreed to pursuant to the Union Pacific contract.

**III. MOTION TO DISMISS**

Union Pacific filed a counterclaim with this Court's

-7-

permission against CG Power for breach of contract. *See* Filing No. 81. Union Pacific claims CG Power breached and/or materially deviated from its duties under the Union Pacific contract by failing to keep in force general liability (including contractual liability) insurance of $500,000 or the amount required by law for bodily injury, property damage, and any other insurance required by law, whichever is greater which named Union Pacific as an additional insured and/or failing to respond to Union Pacific's status as an additional insured. As a result, Union Pacific claims it has suffered and will continue to suffer money damages.

CG Power claims the counterclaim fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Pro. 12(b)(6) because: (1) the clause Union Pacific cites to in its contract is void against public policy; and (2) as a separate basis, the general liability (including contractual liability) policy that Union Pacific purportedly required does not, by definition, cover damage to the property itself (i.e. the transformer being carried). Although CG Power's arguments may contain merit, the Court finds Union Pacific has set forth the required elements to state a plausible breach of contract claim in its counterclaim against CG Power, even if actual recovery on that claim is remote or unlikely. *Twombly*, 550 U.S. at 556 (quoting *Scheuer*, 416 U.S. at 236 (1974)).

IT IS ORDERED:

      1. Plaintiffs' motion for reconsideration (Filing No. 82) is denied.

      2. Plaintiff CG Power Systems Canada, Inc.'s motion to dismiss (Filing No. 89) is denied.

      DATED this 29th day of June, 2011.

                        BY THE COURT:

                        /s/ Lyle E. Strom
                        _____
                        LYLE E. STROM, Senior Judge
                        United States District Court